EXHIBIT A

**Darrell Van Ormer and Associates**
Darrell Van Ormer, Esquire
PA Attorney License No. 22046
Steven R. Snyder, Esquire
PA Attorney License No. 90994
344 South Market Street
Elizabethtown, PA 17022
(717) 367-6831
FAX (717) 361 2141

09- 10891

ENTERED & FILED

2009 JUL 22  AM 9: 34

PROTHONOTARY OFFICE
LANCASTER, PA.

Attorneys for the Plaintiffs

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY

DANIEL AND SAVILLA STOLTZFUS

② 90332619
② 90332620

Plaintiffs

v.

LITTLE ELK CREEK FARM, LLC;  *LECF*
PSR LANCASTER, LLC;  ② 90307601
PSR KIRKWOOD, LLC;  ② 90307600
THE LAW OFFICES OF
    BYLER, GOODLEY & WINKLE P.C.; *LOBG+W*
WILLIAM BRYAN BYLER;  ② 90332621
SAMUEL A. GOODLEY JR.;  ② 90057864
ERIC L. WINKLE;  ② 90332625
OLD ORDER AMISH HELPING PROGRAM; ② 90152619
LEVI ESH;  ② 90332691
AMISH AID SOCIETY; and  *AMISHAS*
AMISH SOCIETY OF LANCASTER COUNTY, PA,
            *ASLCPA*          Defendants

Docket No.  CI-09- 10891

CIVIL ACTION AT LAW

JURY TRIAL DEMANDED

## NOTICE

*YOU HAVE BEEN SUED IN COURT.* If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lancaster Bar Association
Lawyer Referral Service
28 East Orange Street
Lancaster, PA 17602
Telephone: 717-393-0737

09-10891

# N O T I C I A

*Le han demandado a usted en la corte.* Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene viente (20) dias de plazo al partir de la facha de la demanda y la notificacion. Usted debe presentar una apariencia escrita o en Persona o por abogado y archivar en la corte en forma escrita sus defensas o sus objectiones a las demandas encontra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede entrar una orden contra usted sin previo aviso o notificacion y por cualquier queja o alivio que es pedido en la peticion de demanda. Usted puede perder dinero o sus propiedades o otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABODAGO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lancaster Bar Association
Lawyer Referral Service
28 East Orange Street
Lancaster, PA 17602
Telephone: 717-393-0737

09-10891

**Darrell Van Ormer and Associates**
Darrell Van Ormer, Esquire
PA Attorney License No. 22046
Steven R. Snyder, Esquire
PA Attorney License No. 90994
344 South Market Street
Elizabethtown, PA 17022
(717) 367-6831
FAX (717) 361 2141

ERIE FILE COPY

2009 JUL 22  AM 9: 35

PROTHONOTARY OFFICE
LANCASTER, PA.

Attorneys for the Plaintiffs

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY

DANIEL AND SAVILLA STOLTZFUS
                                    *Plaintiffs*

        v.

LITTLE ELK CREEK FARM, LLC;
PSR LANCASTER. LLC;
PSR KIRKWOOD, LLC;
THE LAW OFFICES OF
        BYLER, GOODLEY & WINKLE P.C.;
WILLIAM BRYAN BYLER;
SAMUEL A. GOODLEY JR.;
ERIC L. WINKLE;
OLD ORDER AMISH HELPING PROGRAM;
LEVI ESH;
AMISH AID SOCIETY; and
AMISH SOCIETY OF LANCASTER COUNTY, PA,
                                    *Defendants*

:
:
:
:
: Docket No. CI- 09-10891
:
: CIVIL ACTION AT LAW
:
:
:
: JURY TRIAL DEMANDED
:
:
:
:
:
:
:

## **COMPLAINT**

NOW COMES, Plaintiffs Daniel Stoltzfus and Savilla Stoltzfus, by and through

their Attorneys, Darrell Van Ormer, Esquire and Steven R. Snyder, Esquire and files the

within Complaint averring the following:

## PARTIES

1.    Plaintiffs are Daniel Stoltzfus and Savilla Stoltzfus, adult married individuals currently residing at 51 Line Street, Malvern, Chester County, Pennsylvania.

2.    Defendant, Little Elk Creek Farms, LLC is a Pennsylvania registered limited liability company owned by Samuel A. Goodley Jr., which maintains its principle place of business at 829 Little Elk Creek Road, Oxford, Chester County, Pennsylvania, 19363.

3.    Defendant, PSR Lancaster, LLC is a Pennsylvania registered limited liability company owned by Eric L. Winkle which maintains its principle place of business at 363 West Roseville Road, Lancaster, Pennsylvania, 17601.

4.    Defendant, PSR Kirkwood, LLC is a Pennsylvania registered limited liability company owned by William Bryan Byler, which also maintains its principle place of business at 363 West Roseville Road, Lancaster, Pennsylvania, 17601.

5.    Defendant, Byler, Goodley and Winkle, P.C. is a Pennsylvania registered professional company, and law firm with its principle place of business also located at 363 West Roseville Road, Lancaster, Pennsylvania, 17601.

6.    Defendants William Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle are partners in the law firm of Byler, Goodley and Winkle, P.C. a Pennsylvania registered professional company, with its principle place of business located at 363 West Roseville Road, Lancaster, Pennsylvania, 17601.

7.    Defendant Old Order Amish Helping Program (herein after referred to as "Mortgagee") is a Pennsylvania non-profit corporation involved in making loans and mortgages to members of the Amish community, located at 285 Smith Road, Millersburg, Lancaster County, Pennsylvania, 17061.

8.    Defendant Levi Esh is an adult individual and the Administrator of Old Order Amish Helping Program, located at 285 Smith Road, Millersburg, Lancaster County, Pennsylvania, 17061.

9.    Defendant Amish Aid Society (herein after referred to as "Insurer") is a Pennsylvania Company in the business of providing insurance to members of the Amish community, with its principle place of business located at 543 Maple Shade Road, Kirkwood, Lancaster County, Pennsylvania, 17536.

10.   Amish Society of Lancaster County, Pennsylvania is a sect of the Old Amish Order with its location at 584 Shady Road, Kirkwood, Lancaster County, Pennsylvania, 17536.

## JURISDICTION/VENUE

11. Paragraphs 1 through 10 are incorporated herein as though fully set forth at length.

12. This Court has subject matter jurisdiction over this action pursuant to 42 Pa. Cons. Stat. § 931.

13. Venue is proper in this Court pursuant to Pennsylvania Rules of Civil Procedure 1006(a)(1) because (a) Plaintiffs at the time this cause of action arose, and Defendants reside in Lancaster County; (b) the cause of action arises out of transactions and occurrences that took place in Lancaster County, and (c) the property which is the subject of this dispute is situated in Lancaster County.

## FACTUAL BACKGROUND

14. Paragraphs 1 through 13 are incorporated herein as though fully set forth at length.

15. Plaintiffs owned the property located at 834 Pumping Station, Road,

Kirkwood, Lancaster County, Pennsylvania, 17536 in fee simple, absolute. Exhibit A

16. Plaintiffs were both members of the Amish Church since birth.

17. On or about October 9, 2001 Plaintiffs borrowed $300,000.00 in mortgage
financing from Defendant Old Amish Helping Program (hereinafter referred to as
"Mortgagee") Exhibit B

18. The terms of both the Mortgage and the Note required Plaintiffs to maintain
insurance on the property through only Defendant Amish Aid Society (hereinafter
referred to as "Insurer"). See Exhibit B, Page 1, Paragraph (b) of the Note, and Page 2,
Paragraph 2(a) of the Mortgage.

19. Plaintiffs used the money to build a dwelling and several structures on the
property to begin a metal fabrication business.

20. In or about July of 2003, Plaintiffs' business had become very successful and
employed between eight and ten workers.

21. Plaintiffs had also begun a working relationship with a business associate, Lee
Kaplan, who was not a member of the Amish Church.

22. In or about July 2003, one Ben Fisher, council member and head of Defendant
Amish Society of Lancaster Pennsylvania (hereinafter referred to as "Amish Society"),
and other council members met with Plaintiff Daniel Stoltzfus to inform him that his
business had become too successful.

23. The Amish Society council members also told Stoltzfus that he could not
allow his non-Amish business associate into his house.

24. Fisher told Daniel Stoltzfus that if he did not stop his business from growing
any larger, the Amish Society would force all of his employees to quit.

25. Plaintiffs continued to conduct their business at its current size.

26. Approximately two weeks later, none of Plaintiffs' employees showed up for work and continued to stay away permanently from that point forward.

27. Upon information and belief, it is alleged that the Amish Society of Lancaster Pennsylvania issued an ultimatum to all of Plaintiffs' employees to quit working for Plaintiffs, or they would be cast out of the Amish church and shunned by the community.

28. Shortly thereafter, Plaintiffs' business customers most of whom were also members of the Amish Community, discontinued doing business with Plaintiffs.

29. Upon information and belief, it is alleged that the Amish Society of Lancaster Pennsylvania issued threats to all of Plaintiffs' Amish customers that they should discontinue doing business with Plaintiffs, or they would be cast out of the Amish church and shunned by the community.

30. Members of the Amish Society Council then attempted to gain custody of Daniel Stoltzfus' wife, making a false police report to state police, claiming that Daniel Stoltzfus was holding her against their will.

31. The state police were called to the residence, and after investigating the accusations and finding them to be unfounded, told the members of the Amish Society to vacate Plaintiffs' property.

32. After this attempt to break up Plaintiffs' marriage failed, it is believed and therefore averred that members of the Amish Society contacted local child welfare authorities and filed a false report claiming that Plaintiffs were abusing their children by not being able to properly care for them.

33. After investigation by local authorities, this report was also found to be inaccurate.

34. As a result of this action by Amish Society, Plaintiffs approached Ben Fisher and renounced their membership in the Amish church.

35. Shortly after that incident, on August 18, 2003, Defendant Levi Esh sent Plaintiffs a letter on behalf of Defendant, Mortgagee, Old Order Amish Helping Program, informing Plaintiffs that since they were no longer members of the Amish church, they would have to seek financing elsewhere. Exhibit C

36. In reviewing the mortgage and note (Exhibit B), there is no provision requiring a mortgagor who leaves the Amish Church to pay their mortgage in full and secure alternative financing.

37. Despite being told that the mortgage was required to be paid in full by Levi Esh, Plaintiffs continued to make their regular payments of $2,100.00 per month at 4.25% interest.   See copy of payments made by Plaintiffs on the mortgage on the ledger maintained by Defendant, Mortgagee, attached hereto as Exhibit D

38. Several days later the Plaintiffs were informed verbally by Defendant Insurer that their property insurance was being canceled, in spite of the fact that Plaintiffs had already paid the premium in full for the year.

39. Plaintiffs were able to obtain quotes for insurance on the property by both Nationwide and Harleysville insurance companies; however, none of those companies were acceptable to Defendant Mortgagee who required that the property could only be insured by Defendant Insurer, Amish Aid, now an impossible condition.

40. In November of 2003, the Administrator of Old Order Amish Helping Program, Defendant Levi Esh came to Plaintiffs' property with an individual named Dan Beiler to inform Plaintiffs that  they were in default of their mortgage for lack of property and casualty insurance and demanded payment of the mortgage in full.

41. In October of 2004, without reason, the Plaintiffs' interest rate for their mortgage upon the Property was raised from 4.25% to 7% by the Defendant, Mortgagee.

A copy of the letter to the Plaintiffs from Defendant, Mortgagee, raising Plaintiffs' interest rate to 7% is attached hereto as Exhibit E.

42.   At this same time, Plaintiffs' monthly payment was increased from $2,100.00 monthly to $2,500.00 monthly, without reason, by the Defendant, Mortgagee. See copy of the mortgage ledger maintained by Defendant, Mortgagee, attached hereto as Exhibit F.

43. During this same time period, all other borrowers of the Defendant, Mortgagee, were only charged an interest rate of 4.25%. See the letter sent out to borrowers of the Defendant, Mortgagee, by Defendant, Levi Esh, attached hereto as Exhibit G.

44. After being informed that their mortgage payment had been arbitrarily increased from $2,100 per month to $2,500 per month, Plaintiffs discontinued paying their mortgage in February 2005.

45. Shortly thereafter, Defendant Mortgagee retained the services of Defendant, law firm of Byler, Goodley and Winkle, P.C. to initiate foreclosure proceedings.

46. After beginning representation of the Defendant, Mortgagee, it is hereby alleged that Defendant, Law Offices of Byler, Goodley & Winkle P.C., went so far to represent its client, as to pay a visit to Plaintiff, Savilla Stoltzfus's parents' home to interfere with their family relationship. See the letter attached hereto as Exhibit H, written to Plaintiff, Savilla Stoltzfus, from her Mother about the visit she received from Samuel Goodley, named partner of the Defendant, Law Offices.

47. The initial Mortgage Foreclosure Complaint filed by Defendant, Byler, Goodley and Winkle, P.C. at Paragraph 7 states the reason for the foreclosure action was that Plaintiffs "have failed to fulfill their obligation under Paragraph 1 of the Note and

Paragraph 2 of the Mortgage, and have failed to maintain Amish Aid coverage on the property." Exhibit I

48. Defendant Byler, Goodley and Winkle, P.C. subsequently amended their Mortgage Foreclosure Complaint, to "drop all reference to the failure to maintain Amish Aid. See Exhibit J

49. On or about January 10, 2007, Defendant Mortgagee obtained a judgment against Plaintiffs in the amount of the balance of the mortgage in the amount of 296,142.01

50. On June 27, 2007, the property was sold at sheriff's sale for $342,100.00 to John Glick. Exhibit K

51. At the time the property was sold, it was appraised at approximately 1.2 million dollars. Exhibit L

52. Shortly after purchasing the property at Sheriff's sale, John Glick transferred his interest in the property to Defendants Little Elk Creek Farms, LLC; PSR Lancaster, LLC; PSR Kirkwood, LLC.; the owners of which are also the partners in the law firm of Byler, Goodley and Winkle, P.C. retained by Mortgagee to institute the foreclosure proceedings on the property and who serve as legal counsel to the Amish community. See Exhibit M

53. Upon information and belief it is averred that the three companies were set up specifically to hide the identity of the three law partners and to gain ownership of Plaintiffs' property.

54. It is further averred that John Glick was a straw buyer, and made the purchase on behalf of the three law partners in order to mask their identities.

55. After several unsuccessful motions and appeals for injunctive relief and to have the Sheriff's Sale set aside, on March 30, 2009, Plaintiffs and their twelve children

were physically evicted from the property with only the clothes on their backs. See Exhibit N.

56. Having no notice of the date of the eviction, and with an appeal still pending, Plaintiffs were unable to make arrangements to have their personal belongings and property as well as extensive business equipment removed from the property. See Exhibit O

57. Defendants, Little Elk Creek Farms, LLC., PSR Lancaster, LLC, PSR Kirkwood, LLC, the law firm of Byler, Goodley and Winkle, P.C., William Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle then filed a false police report, informing State Police that the commercial vehicles belonging to Plaintiffs which still remained on the Property were abandoned at which time the vehicles were towed to various salvage yards. See Exhibit P.

58. It is believed and therefore averred that Defendants, Little Elk Creek Farms, LLC., PSR Lancaster, LLC, PSR Kirkwood, LLC, the law firm of Byler, Goodley and Winkle, P.C., William Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle were well aware that Plaintiffs owned the commercial vehicles and that they were not abandoned as they claimed in there report to the State Police.

59. Defendants have never made any claim of ownership or title to the personal property belonging to Plaintiffs which remains on the real property.

60. Despite numerous attempts by Plaintiffs, Defendants, Little Elk Creek Farms, LLC., PSR Lancaster, LLC, PSR Kirkwood, LLC, the law firm of Byler, Goodley and Winkle, P.C., William Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle have and continue to refused to allow Plaintiffs access to the property to remove their personal property. See Exhibit Q

09- 1 08 9 1

61. Plaintiffs have still not been able to gain possession of their personal

belongings and furnishings and the extensive business equipment and inventory, still on

the property and in the custody of Defendants Little Elk Creek Farms, LLC; PSR

Lancaster, LLC; PSR Kirkwood, LLC.

## COUNT I

### PLAINTIFFS v. LITTLE ELK CREEK FARM, LLC; PSR LANCASTER LLC; PSR KIRKWOOD, LLC; THE LAW OFFICES OF BYLER, GOODLEY & WINKLE P.C., WILLIAM BRYAN BYLER; SAMUEL A. GOODLEY JR.; ERIC L. WINKLE; OLD ORDER AMISH HELPING PROGRAM; LEVI ESH, INDIVIDUALLY AND IN HIS CAPACITY AS THE ADMINISTER OF OLD ORDER AMISH HELPING PROGRAM; AMISH AID SOCIETY; AND AMISH SOCIETY OF LANCASTER COUNTY, PA,

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

62. Paragraphs 1 through 61 are incorporated herein as though fully set forth at

length.

63. Section 1961 of the Racketeer Influenced and Corrupt Organizations Act

(RICO), defines racketeering activity to include "any act or threat involving murder,

kidnapping, gambling, arson, robbery, bribery, extortion...which is chargeable under

State law and punishable by imprisonment for more than one year" as well as "any act

which is indictable under the [criminal] provisions of Title 18, United States Code

[including] violation of the following Sections: 18 USCS §§ 891 through 894 (relating to

extortionate credit transactions), 18 USCS § 1512 (relating to tampering with a witness,

victim, or an informant), 18 USCS § 1513 (relating to retaliating against a witness,

victim, or an informant), 18 USCS § 1951 (relating to interference with commerce,

robbery, or extortion), 18 USCS § 1961 *et seq*."

64. Title 18 subsection 891 USCS defines Extortionate Credit Transactions as follows:

> (6) An extortionate extension of credit is any extension of credit with respect to which it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person.
>
> (7) An extortionate means is any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person.

18 USCS § 891.

65. Defendants Old Order Amish Helping Program, and Levi Esh, did arbitrarily increase the balance of Plaintiffs' Mortgage principle and interest rate as well as adding interest retroactively to the principle balance, in a continued pattern of extortionate credit transactions, the result of which was the loss of Plaintiffs' home, property, business and livelihood and damage to Plaintiffs' business and personal reputation.

66. Defendants Old Order Amish Helping Program, Levi Esh, Amish Aid Society, and the Amish Society of Lancaster County, Pennsylvania, did conspire to and did in fact have Plaintiffs' property and casualty insurance cancelled, Plaintiffs' mortgage payment amount and interest rate increased and Plaintiffs' business destroyed so that Plaintiffs could no longer earn money to support their family and pay their mortgage, in a concentrated pattern of extortionate credit transactions and practices.

67. Defendants, Little Elk Creek Farms, LLC., PSR Lancaster, LLC, PSR Kirkwood, LLC, the law firm of Byler, Goodley and Winkle, P.C., William Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle, did conspire with the other defendants to undertake a concentrated pattern of extortionate credit transactions and practices in order to gain possession of Plaintiffs' Property.

68. Plaintiffs believe and therefore aver that as a direct result of the Defendants, Old Order Amish Helping Program, Levi Esh, Amish Aid Society, and the Amish Society of Lancaster County, Pennsylvania's extortionate credit transactions and practices, Plaintiffs' employees were intimidated and coerced into quitting their employment with Plaintiffs, Plaintiffs' business customers would no longer do business with them, Plaintiffs' mortgage payments and interest rate was arbitrarily increased, Plaintiffs' property and casualty insurance was arbitrarily cancelled and Plaintiffs were forced to default on their mortgage, causing them to lose their home, property, business and personal and business property.

69. Defendants, Little Elk Creek Farms LLC, PSR Lancaster, LLC, PSR Kirkwood, LLC, the law firm of Byler, Goodley and Winkle, P.C., William Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle, Old Order Amish Helping Program, Levi Esh, Amish Aid Society, and the Amish Society of Lancaster County, Pennsylvania have continually and systematically violated Section 1961 the Racketeer Influenced and Corrupt Organizations Act (RICO). 18 USCS § 1961 *et seq*.

70. Title 18 subsection, 1951 defines "interference with commerce" as any use of threats of violence or, in any way or degree obstructing, delaying, or affecting commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspiracy so to do, or committing or threatening physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of Section 1951. 18 USCS § 1951

71. Defendants, PSR Kirkwood, LLC, Little Elk Creek, LLC, PSR Lancaster. LLC, William Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle, the Law Offices Of Byler, Goodley & Winkle P.C., Old Order Amish Helping Program, Levi Esh, and Amish Aid Society did conspire and enter into a continued and systematic course of

conduct to purposefully interfere with the business affairs of Plaintiffs, through the use of

threats and attempts of harm and kidnapping, by obstructing, delaying, interfering with

and otherwise damaging Plaintiffs ability to conduct his business and damaging his

business reputation thus causing Plaintiffs' business to fail and Plaintiffs to lose their

business, property, home and livelihood.

72. Defendants did further intimidate and threaten Plaintiffs' employees causing

them to quit their employment with Plaintiffs, further causing Plaintiffs' business to fail

and Plaintiffs to lose their business, property, home and livelihood.

73. Defendants further intimidated and threaten Plaintiffs' customers causing

them to discontinue doing business with Plaintiffs, further causing Plaintiffs' business to

fail and Plaintiffs to lose their business, property, home and livelihood.

74. Defendants did further conspire to and did in fact have Plaintiffs' property and

casualty insurance cancelled, Plaintiffs' mortgage payment and interest rate increased and

Plaintiffs' business destroyed so that Plaintiffs could no longer earn money to support

their family and pay their mortgage, thus causing Plaintiffs to lose their business, home

and property.

75. It is believed and therefore averred that Defendants, PSR Kirkwood, LLC,

Little Elk Creek, LLC, PSR Lancaster. LLC, William Bryan Byler, Samuel A. Goodley

Jr., and Eric L. Winkle, the Law Offices Of Byler, Goodley & Winkle P.C., did set up

three "dummy" companies and arranged for the straw purchase of Plaintiffs' property at

Sheriff's Sale, interfering in the business affairs and commerce of Plaintiffs

76. Defendants PSR Kirkwood, LLC, Little Elk Creek, LLC, PSR Lancaster.

LLC, William Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle, the Law Offices

of Byler, Goodley & Winkle P.C., did violate 18 Pa.C.S. § 4906 when they filed a false

police report claiming that the trucks belonging to Plaintiffs were abandoned and had the

said vehicles hauled away to various salvage yards, knowing full well that the vehicles belonged to Plaintiffs and not allowing Plaintiffs access to the Property to recover their vehicles.

77. 18 Pa.C.S. § 3921. Theft by unlawful taking or disposition provides that a person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.

78. Defendants PSR Kirkwood, LLC, Little Elk Creek, LLC, PSR Lancaster. LLC, William Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle, the Law Offices Of Byler, Goodley & Winkle P.C., did violate 18 Pa.C.S. § 3921, theft by unlawful taking or disposition, when they took possession and control of Plaintiffs' personal and business property, when they unlawfully exercised control over same, by not allowing Plaintiffs to regain possession of the said property, knowing that the property belonged to Plaintiffs and that Defendants had no right or title to the personal property and when they filed a false police report claiming that the property was abandoned and had Plaintiffs' commercial vehicles towed away as salvage.

79. Defendants, Little Elk Creek Farms LLC, PSR Lancaster, LLC, PSR Kirkwood, LLC, the law firm of Byler, Goodley and Winkle, P.C., William Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle, Old Order Amish Helping Program, Levi Esh, Amish Aid Society, and the Amish Society of Lancaster County, Pennsylvania have continually and systematically violated Section 1961 the Racketeer Influenced and Corrupt Organizations Act (RICO). 18 USCS § 1961 *et seq.*

WHEREFORE, Plaintiffs request this honorable Court:

(a) order Defendants to divest themselves of Plaintiffs' real and personal property,

(b) ordering the dissolution of the three limited liability shell companies and require the return of all of Plaintiffs' real and personal property and require defendants to make restitution to Plaintiffs for any personal property which is now not in Defendants possession or control,

(c) award Plaintiffs three times actual damages and punitive damages as well as Plaintiffs' court costs and attorneys' fees in accordance with 18 USCS § 1961 *et seq.* and such other relief as may be proper and in the interest of justice and in excess of the limits of arbitration.

## COUNT II

**PLAINTIFFS v. LITTLE ELK CREEK FARM, LLC; PSR LANCASTER LLC; PSR KIRKWOOD, LLC; THE LAW OFFICES OF BYLER, GOODLEY & WINKLE P.C., WILLIAM BRYAN BYLER; SAMUEL A. GOODLEY JR.; ERIC L. WINKLE; OLD ORDER AMISH HELPING PROGRAM; LEVI ESH, INDIVIDUALLY AND IN HIS CAPACITY AS THE ADMINISTER OF OLD ORDER AMISH HELPING PROGRAM; AMISH AID SOCIETY; AND AMISH SOCIETY OF LANCASTER COUNTY, PA,**

## VIOLATION OF THE PENNSYLVANIA CORRUPT ORGANIZATIONS ACT

80. Paragraphs 1 through 79 are incorporated herein as though fully set forth at length.

81. The Pennsylvania Corrupt Organizations Act, 18 Pa.C.S. § 911(b), Prohibited Activities provides in relevant part:

(b) Prohibited activities.—

(1) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of *racketeering activity* in which such person participated as a principal, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise...

(2) It shall be unlawful for any person through a pattern of racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any enterprise.

(3) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

(4) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (1), (2) or (3) of this subsection.

18 Pa.C.S. § 911(b)

82. The Act further defines "Racketeering Activity" as:

(i) An act which is indictable under any of the following provisions of this title [including]:
    Chapter 29 (relating to kidnapping)
    Chapter 33 (relating to arson, criminal mischief and other property destruction)
    Section 4108 (relating to commercial bribery and breach of duty to act disinterestedly)
    Section 5111 (relating to dealing in proceeds of unlawful activities)
(iii) A conspiracy to commit any of the offenses set forth in subparagraph (i), (ii) and (ii.1) or (v).

18 Pa.C.S. § 911(h)

83. The Act further defines a "pattern of racketeering activity" as "a course of conduct requiring two or more acts of racketeering activity." 18 Pa.C.S. § 911(h)

84. A person commits the crime of "terroristic threats" under 18 Pa.C.S. § 2706 if the person communicates, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another.

85. A person is guilty of "Kidnapping" under 18 Pa.C.S. § 2901 if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:

    (1) To hold for ransom or reward, or as a shield or hostage.
    (2) To facilitate commission of any felony or flight thereafter.
    (3) To inflict bodily injury on or to terrorize the victim or another.
    (4) To interfere with the performance by public officials of any governmental or political function.

86. Defendants Amish Society of Lancaster County did conspire and attempt to kidnap Plaintiff's wife and children and did hold Plaintiff's wife against her will until State police were called and forced Defendants to release Plaintiff's wife and to vacate Plaintiffs' property, in an attempt to terrorize and intimidate Plaintiffs in order to force them off of their property.

87. 18 Pa.C.S. § 2903 provides that "a person commits the offense [of false imprisonment] if he knowingly restrains another unlawfully so as to interfere substantially with his liberty" and further provides that the offense is graded as a misdemeanor of the second degree.

88. 18 Pa.C.S. § 2903 further provides that "if the victim of the offense [of false imprisonment] is an individual under 18 years of age, [the offense] is a felony of the second degree.

89. Defendants Amish Society of Lancaster County, Pennsylvania did violate 18 Pa.C.S. § 2903 when they attempted to take physical possession and control of Plaintiff Savilla Stoltzfus an adult individual, which is a misdemeanor of the second degree.

90. Defendants Amish Society of Lancaster County, Pennsylvania did further violate 18 Pa.C.S. § 2903 when they attempted to take physical possession and control of Plaintiffs' children by contacting the Lancaster County child welfare authorities and claiming the Plaintiffs could not take care of their children and that they should be taken from Plaintiffs which is a felony of the second degree.

91. A person is guilty of criminal mischief under 18 Pa.C.S. §3304 if he intentionally or recklessly tampers with tangible property of another so as to endanger person or property; intentionally or recklessly causes another to suffer pecuniary loss by deception or threat; or intentionally damages real or personal property of another;

92.  Defendants did intentionally and recklessly tampers with and remove and conspire to remove Plaintiffs' tangible property by taking possession of Plaintiffs' personal belongings and household furniture, some of which, it is believed and therefore averred, has been removed from the property by members of the Amish Society of Lancaster County, and by taking possession of Plaintiffs' business equipment and supplies forcing Plaintiffs' business to fail and Plaintiffs to default of their mortgage and lose their home, business and property.

93. Defendants PSR Kirkwood, LLC, Little Elk Creek, LLC, PSR Lancaster. LLC, William Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle, the Law Offices of Byler, Goodley & Winkle P.C., did violate 18 Pa.C.S. § 4906 when Defendants contacted the Pennsylvania State Police on or about May 20, 2009 and filed a false police report claiming that the trucks belonging to Plaintiffs were abandoned and had the said vehicles hauled away to various salvage yards, knowing full well that the vehicles belonged to Plaintiffs and not allowing Plaintiffs access to the Property to recover their vehicles.

94. Defendants did further intentionally, recklessly, and systematically causes Plaintiffs to suffer pecuniary loss by a pattern of continued deception and threats.

95. Defendants did further intentionally damage Plaintiffs' real and personal property by removing Plaintiffs' personal property from the property and by holding Plaintiffs' business equipment and supplies forcing Plaintiffs to go out of business and lose their home.

96. Pursuant to 18 Pa.C.S. § 4108(a) relating to commercial bribery and breach of duty to act disinterestedly, a person who holds himself out to the public as being engaged in the business of making disinterested selection, appraisal, or criticism of commodities

or services commits a misdemeanor of the second degree if he solicits, accepts or agrees
to accept any benefit to influence his selection, appraisal or criticism.

97. 18 Pa.C.S. § 4108(c) further provides that a person commits a misdemeanor of
the second degree if he confers, or offers or agrees to confer, any benefit the acceptance
of which would be criminal under subsections (a) or (b) of this section.

98. Defendants, Little Elk Creek Farms, LLC; PSR Lancaster, LLC; PSR
Kirkwood, LLC; the law firm of Byler, Goodley and Winkle, P.C. and Defendants
William Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle violated 18 Pa.C.S. §
4108, by breaching their duty to act disinterestedly when the law firm and the individual
partners who handled all of the legal representation, on behalf of Old Order Amish
Helping Program, Levi Esh, Amish Aid and the Amish Society of Lancaster County,
subsequently formed three limited liability shell companies in order to covertly acquire
Plaintiffs' property at approximately one third of its fair market value.

99. Old Order Amish Helping Program, Levi Esh, Amish Aid Society and the
Amish Society of Lancaster County, breached their duty under 18 Pa.C.S. § 4108, to act
disinterestedly, when, after Plaintiffs were forced to leave the Amish Church, the
Defendants did cancel Plaintiffs' property and casualty insurance and raise Plaintiffs'
mortgage payment and interest, forcing Plaintiffs to lose their property and business
through foreclosure.

100.    A person commits a felony of the first degree under 18 Pa.C.S. § 5111, if
the person conducts a financial transaction under any of the following circumstances:

   (1) With knowledge that the property involved represents the proceeds of
   unlawful activity, the person acts with the intent to promote the carrying
   on of the unlawful activity.

   (2) With knowledge that the property involved represents the proceeds of
   unlawful activity and that the transaction is designed in whole or in part to
   conceal or disguise the nature, location, source, ownership or control of
   the proceeds of unlawful activity.

101.    Defendants Old Order Amish Helping Program, Levi Esh, Amish Aid and
the Amish Society of Lancaster County did violate 18 Pa.C.S. § 5111 when they did
conspire and act so as to cause Plaintiffs' business to fail by interfering with Plaintiffs'
employees and customers, and when they caused Plaintiffs' insurance to be canceled and
Plaintiffs' mortgage payment and interest rate to be arbitrarily increased and other
unlawful activity thus forcing Plaintiffs to default on their mortgage.

102.    Defendants, Little Elk Creek Farms, LLC; PSR Lancaster, LLC; PSR
Kirkwood, LLC; the law firm of Byler, Goodley and Winkle, P.C. and Defendants
William Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle did further violated 18
Pa.C.S. § 5111 when they did conspire and collude with Mortgagee company and Insurer,
and in handling all foreclosure and other legal proceedings against Plaintiffs and then
subsequently formed three limited liability shell companies in order to covertly acquire
Plaintiffs' property at approximately one third of its fair market value, all of which was
designed in whole or in part to conceal and disguise the nature, location, source,
ownership and control of the proceeds of unlawful activity to gain possession of
Plaintiffs' property.

103.    The Pennsylvania Corrupt Organizations Act, 18 Pa.C.S. § 911(d)
establishes the following civil remedies:

> (1) The several courts of common pleas, and the Commonwealth
> Court, shall have jurisdiction to prevent and restrain violations of
> subsection (b) of this section by issuing appropriate orders, including but
> not limited to:
>> (i) ordering any person to divest himself of any interest
>> direct or indirect, in the enterprise; imposing reasonable
>> restrictions on the future activities or investments of any person,
>> including but not limited to, prohibiting any person from engaging
>> in the same type of endeavor as the enterprise engaged in; and
>> (ii) making due provision for the rights of innocent
>> persons, ordering the dissolution of the enterprise, ordering the
>> denial, suspension or revocation of charters of domestic
>> corporations, certificates of authority authorizing foreign

corporations to do business within the Commonwealth of Pennsylvania, licenses, permits, or prior approval granted to any enterprise by any department or agency of the Commonwealth of Pennsylvania; or prohibiting the enterprise from engaging in any business.

(2)   In any proceeding under this subsection, the court shall proceed as soon as practicable to the hearing and determination thereof. Pending final determination, the court may enter preliminary or special injunctions, or take such other actions, including the acceptance of satisfactory performance bonds, as it may deem proper.

WHEREFORE, Plaintiffs request this honorable Court:

(a)  order Defendants to divest themselves of Plaintiffs' real and personal property,

(b)  ordering the dissolution of the three limited liability shell companies and require the return of all of Plaintiffs' real and personal property and require defendants to make restitution to Plaintiffs for any personal property which is now not in Defendants possession or control,

(c)  award Plaintiff three times actual damages, punitive damages, attorneys' fees and such other relief as the court may deem proper and in the interest of justice and in excess of the limits of arbitration.

## COUNT III

## PLAINTIFFS v. AMISH AID SOCIETY

## BREACH OF INSURANCE CONTRACT

104.  Paragraphs 1 through 103 are incorporated herein as though fully set forth at length.

105.   Defendant Amish Aid offered to issue a policy of property and casualty insurance to Plaintiffs in return for Plaintiffs' agreement to pay the annual premium each year.

106.   Defendant Amish Aid issued the policy for the year of 2003, and Plaintiffs paid the premium in full for that year.

107.    Sometime in mid-2003, while Plaintiffs' insurance policy was fully paid

for, Defendant Amish Aid arbitrarily cancelled Plaintiffs' insurance policy.

108.    Defendants breached their contract with Plaintiffs when they cancelled

Plaintiffs' insurance policy for 2003.

WHEREFORE, Plaintiffs request this Honorable Court award them actual

damages and punitive damages in an amount in excess of the limits of arbitration, and

such other relief as the Court may deem proper and in the interest of justice.


## COUNT IV

**PLAINTIFFS v. LITTLE ELK CREEK FARM, LLC; PSR LANCASTER LLC; PSR KIRKWOOD, LLC; THE LAW OFFICES OF BYLER, GOODLEY & WINKLE P.C., WILLIAM BRYAN BYLER; SAMUEL A. GOODLEY JR.; ERIC L. WINKLE; OLD ORDER AMISH HELPING PROGRAM; LEVI ESH, INDIVIDUALLY AND IN HIS CAPACITY AS THE ADMINISTER OF OLD ORDER AMISH HELPING PROGRAM; AMISH AID SOCIETY; AND AMISH SOCIETY OF LANCASTER COUNTY, PA,**

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

109.    Paragraphs 1 through 108 are incorporated herein as though fully set forth

at length.

110.    While the Unfair Insurance Practices Act (UIPA) does not provide for a

private cause of action, violation of the act can be considered in determining if an insurer

has acted in bad faith. *See* 40 P.S. § 1171.11; *Romano v. Nationwide Mut. Fire Ins. Co.*,

435 Pa. Super. 545, 550, 646 A.2d 1228, 1233 (1994).

111.    The Unfair Insurance Practices Act (UIPA) provides that, no person shall

engage in this state in any trade practice which is defined or determined to be an unfair

method of competition or an unfair or deceptive act or practice in the business of

insurance pursuant to this act. 40 P.S. 1171.4.

112.    The UIPA at 40 P.S. § 1171.5, in relevant part, defines "unfair methods of

competition" and "unfair or deceptive acts."

113.    Defendant, Old Order Amish Helping Program, Amish Aid Society, Levi

Esh and the Amish Society of Lancaster County have violated each of the following

defined "unfair methods of competition" and "unfair or deceptive acts":

> (1) Making, publishing, issuing or circulating any estimate, illustration, circular, statement, sales presentation, omission comparison which:
>
>> (i) Misrepresents the benefits, advantages, conditions or terms of any insurance policy;
>>
>>           * * *
>>
>>> (vi) Is a misrepresentation for the purpose of inducing or tending to induce the lapse, forfeiture, exchange, conversion or surrender of any insurance policy;
>
> (2) Making, issuing, publishing or circulating in any manner an advertisement, announcement or statement containing any representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business which is untrue, deceptive or misleading.
>
> (3) Making, issuing, publishing or circulating any oral or written statement which is false or maliciously critical of or derogatory to the financial condition of any person, and which is calculated to injure such person.
>
> (4) Entering into any agreement to commit, or by any concerted action committing, any act or boycott, coercion or intimidation resulting in or tending to result in unreasonable restraint of, or monopoly in, the business of insurance.
>
> (5) Knowingly...making, issuing, publishing or circulating any false material statement of fact as to the financial condition of a person, or knowingly making any false entry of a material fact in any book, report or statement of any person, or knowingly omitting to make a true entry of any material fact pertaining to the business of such person in any book, report or statement of such person.
>
>           * * *
>
> (7) Unfairly discriminating by means of:
>
>           * * *
>
>> (ii) Making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy, fees or rates charged for any policy or contract of insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract, or in any other manner whatever.
>>
>> (iii) Making or permitting any unfair discrimination between individuals of the same class and essentially the same hazard with regard to underwriting standards and practices or eligibility

requirements by reason of race, religion, nationality or ethnic group, age, sex, family size, occupation, place of residence or marital status.

\* \* \*

(9) Canceling any policy of insurance covering owner-occupied private residential properties or personal property of individuals that has been in force for sixty days or more or refusing to renew any such policy unless the policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of the risk or to the hazard assumed by the company; or there has been a substantial change or increase in hazard in the risk assumed by the company subsequent to the date the policy was issued; or there is a substantial increase in hazards  insured against by reason of willful or negligent acts or omissions by the insured; or the insured has failed to pay any premium when due whether such premium is payable directly to the company or its agent or indirectly under any premium finance plan or extension of credit; or for any other reasons approved by the commissioner pursuant to rules and regulations promulgated by the commissioner. No cancellation or refusal to renew by any person shall be effective unless a written notice of the cancellation or refusal to renew is received by the insured either at the address shown in the policy or at a forwarding address. Such notice shall:

(i) Be approved as to form by the insurance commissioner prior to use.

(ii) State the date, not less than thirty days after the date of delivery or mailing on which such cancellation or refusal to renew shall become effective.

(iii) State the specific reason or reasons of the insurer for cancellation or refusal to renew.

(iv) Advise the insured of his right to request, in writing, within ten days of the receipt of the notice of cancellation or intention not to renew that the insurance commissioner review the action of the insurer.

(v) Advise the insured of his possible eligibility for insurance under the act of July 31, 1968 (P.L. 738, No. 233), known as "The Pennsylvania Fair Plan Act," or the Pennsylvania Assigned Risk Plan.

(vi) Advise the insured in a form commonly understandable of the provisions of subparagraphs (ii), (iii) and (iv) of this paragraph as they limit permissible time and reasons for cancellation.

(vii) Advise the insured of the procedures to be followed in prosecuting an appeal.

40 P.S. § 1171.5. Emphasis added.

114.   The Bad Faith Insurance Statute, Provides in relevant part:

In an action arising under an insurance policy, if the court finds that the

insurer has acted in bad faith toward the insured, the court may take all of

the following actions:

(1) Award interest on the amount of the claim from the date the claim was
made by the insured in an amount equal to the prime rate of interest plus
3%.
(2) Award punitive damages against the insurer.
(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.

115. In defining what constitutes bad faith by an insurer, the Pennsylvania

Supreme Court has stated that "the utmost fair dealing should characterize the

transactions between an insurance company and the insured." *Fedas v. Insurance*

*Company of the State of Pennsylvania*, 300 Pa. 555, 151 A. 285 (1930); Witmer v. Royal

Ins. Co., 68 Pa. Super. 12, *Williams v. Nationwide Mut. Ins. Co.*, 2000 PA Super 110; 750

A.2d 881 (2000),

116. Defendant Insurer, Mortgagee and Levi Esh and all of the other Defendants

have continuously acted in bad faith, breaching their duty of good faith and fair dealing.

117.

WHEREFORE, Plaintiffs request this Honorable Court award them

compensatory damages, punitive damages, court costs, and attorney fees in an amount in

excess of the limits of arbitration, and such other relief as the Court may deem proper and

in the interest of justice

09-10891

## COUNT V

## PLAINTIFFS v. LITTLE ELK CREEK FARM, LLC; PSR LANCASTER LLC; PSR KIRKWOOD, LLC; THE LAW OFFICES OF BYLER, GOODLEY & WINKLE P.C., WILLIAM BRYAN BYLER; SAMUEL A. GOODLEY JR.; ERIC L. WINKLE; OLD ORDER AMISH HELPING PROGRAM; LEVI ESH, INDIVIDUALLY AND IN HIS CAPACITY AS THE ADMINISTER OF OLD ORDER AMISH HELPING PROGRAM; AMISH AID SOCIETY; AND AMISH SOCIETY OF LANCASTER COUNTY, PA

### VIOLATION OF THE
### UNFAIR TRADE PRACTICES CONSUMER PROTECTION LAW

118. Paragraphs 1 through 116 are incorporated herein as though fully set forth at length.

119. Violation of the Unfair Insurance Practices Act (UIPA) and common law standards of fraud and deceit constitute unfair trade practices under the Unfair Trade Practices Consumer Protection Law. 73 P.S. § 201-1 *et. seq. See Pekular v. Eich,* 355 Pa. Super. 276; 513 A.2d 427; 1986.

120. As stated Supra, Defendant Amish Aid Society has continuously acted in bad faith, breaching its duty of good faith and fair dealing and committed numerous violations of the Pennsylvania Unfair Insurance Practices Act (UIPA). 73 P.S. § 201-1 *et. seq.*

121. Defendants Old Order Amish Helping Program and Levi Esh working in consort and collusion with Insurer and all other Defendants have also acted in bad faith, committed common law fraud and deceit and to violated the Unfair Trade Practices Consumer Protection Law. 73 P.S. § 201-1 *et. seq.*

122. The Pennsylvania Unfair Trade Practices and Consumer Protection Act, 73 P.S. §§ 201-9.2 provides for private causes of action and the award of damages as follows:

> (a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any

ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act (§ 201-3)[including unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of the act (§ 201 -2(4)(i - xxi))], may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater. *The court may, in its discretion, award up to three times the actual damages sustained*, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. *The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.* Emphasis added

73 P.S. §§ 201-9.2.

WHEREFORE, Plaintiffs requests this Honorable Court award them three times their actual damages plus court costs, attorney fees and such additional relief as the Court may deem necessary or proper.

## COUNT VI

### PLAINTIFFS v. LITTLE ELK CREEK FARM, LLC; PSR LANCASTER LLC; PSR KIRKWOOD, LLC; THE LAW OFFICES OF BYLER, GOODLEY & WINKLE P.C., WILLIAM BRYAN BYLER; SAMUEL A. GOODLEY JR.; ERIC L. WINKLE; OLD ORDER AMISH HELPING PROGRAM; LEVI ESH, INDIVIDUALLY AND IN HIS CAPACITY AS THE ADMINISTER OF OLD ORDER AMISH HELPING PROGRAM; AMISH AID SOCIETY; AND AMISH SOCIETY OF LANCASTER COUNTY, PA

### VIOLATION OF SECTION 1 OF THE SHERMAN ANTI-TRUST ACT

123. Paragraphs 1 through 121 are incorporated herein as though fully set forth at length.

124. Section 1 of the Sherman Anti-Trust Act provides that:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not

exceeding three years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 1 (1890)

125.  It is believed and therefore averred that Defendant, Mortgagee, and Defendant, Insurer, acted in combination, conspiracy or by agreement to require Plaintiffs, under the terms of the mortgage, to obtain hazard insurance for their mortgage only through Defendant Insurer.

126.  It is believed and therefore averred that Defendant, Mortgagee, and Defendant, Insurer, then acted in combination, conspiracy or by agreement, to cancel Plaintiffs' insurance, thus forcing them to default on their mortgage, in spite of the fact that Plaintiffs had made arrangements to insure the property with two other insurance companies which were refused by Defendant mortgagee

127.  The act of forcing Plaintiffs to obtain hazard insurance only through Defendant, Insurer, and no other company, as a condition of remaining in compliance with the said mortgage, and then arbitrarily canceling Plaintiffs' insurance policy, is an unreasonable restraint of commerce and trade.

128.  It is believed and therefore averred that Defendant Mortgagee and Defendant Insurer, as well as the other defendants acted in concert and collusion and in violation of the Sherman Anti-Trust Act.

129.  This combination, conspiracy and agreement between Defendants, Mortgagee and Insurer, and in concert with the other Defendants, forced Plaintiffs to exclusively deal with both companies.

130.  Furthermore, limiting who Plaintiffs can obtain hazard insurance through certainly involves and affects interstate commerce by restraining competition.

WHEREFORE, Plaintiffs requests this Honorable Court award them

compensatory damages, punitive damages plus court costs, attorney fees and such

additional relief as the Court may deem necessary or proper.

## COUNT VII

### PLAINTIFF v. OLD ORDER AMISH HELPING PROGRAM; LEVI ESH, INDIVIDUALLY AND IN HIS CAPACITY AS THE ADMINISTER OF OLD ORDER AMISH HELPING PROGRAM

### VIOLATION OF SECTION 106 OF THE BANK HOLDING COMPANY ACT

131. Paragraphs 1 through 129 are incorporated herein as though fully set forth at

length.

132. Section 106(b)(1) of the Bank Holding Company Act provides that:

(b)(1)  A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement--

(A)  that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service;

(B)  that the customer shall obtain some additional credit, property, or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company;

* * *

(E)  that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit.

12 U.S.C. 1841 *et seq.*

133. Defendant, Mortgagee, is a bank for the purposes of classification under the

Bank Holding Company Act anti-tying provision. 12 U.S.C. 1841 *et seq.*

134. Based upon information and belief, it is hereby alleged that that Defendant,

Insurer, is so closely related to Defendant, Mortgagee that Defendant, Insurer, can and

should be considered an affiliate of Defendant, Mortgagee.

135. This affiliation between Mortgagee and Insurer may be inferred from the nature of the actions Defendant, Mortgagee, and Defendant, Insurer, took against Plaintiffs in such short periods of time with one another and by the contractual language in the mortgage and the Note requiring Mortgagor to obtain insurance only through Defendant Insurer.

136. Placing the condition in a mortgage that the property to be securing by the mortgage is to be covered by a hazard insurance policy issued by an affiliate company is unrelated to maintaining the soundness of credit.

137. Defendant, Mortgagee, benefited by the tying arrangement with Defendant, Insurer, in that it enabled Defendant, Mortgagee's business to earn more money.

138. This tying relationship and the abuse thereof is a violation of the Bank Holding Company Act, and caused Plaintiffs to default on their mortgage and lose their home, real and personal property, business and livelihood. 12 U.S.C. 1841 *et seq.*

WHEREFORE, Plaintiffs requests this Honorable Court award them compensatory damages, punitive damages plus court costs, attorney fees and such additional relief as the Court may deem necessary or proper.

## COUNT VIII

### PLAINTIFF v. OLD ORDER AMISH HELPING PROGRAM; LEVI ESH, INDIVIDUALLY AND IN HIS CAPACITY AS THE ADMINISTER OF OLD ORDER AMISH HELPING PROGRAM

### VIOLATION OF THE ANTI-TYING PROVISION OF THE THRIFT INSTITUTIONS RESTRUCTURING ACT

139. Paragraphs 1 through 137 are incorporated herein as though fully set forth at length.

140. The anti-tying provision of the Thrift Institutions Restructuring Act, (12 U.S.C.A. Sec. 1464(q)(1)) provide as follows:

(1) An association shall not in any manner extend credit, lease, or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement--

(A) that the customer shall obtain additional credit, property, or service from such association, or from any service corporation or affiliate of such association, other than a loan, discount, deposit, or trust service;

(B) that the customer provide additional credit, property, or service to such association, or to any service corporation or affiliate of such association, other than those related to and usually provided in connection with a similar loan, discount, deposit, or trust service; and

(C) that the customer shall not obtain some other credit, property, or service from a competitor of such association, or from a competitor of any service corporation or affiliate of such association, other than a condition or requirement that such association shall reasonably impose in connection with credit transactions to assure the soundness of credit.

141.  The Thrift Institutions Restructuring Act, (12 U.S.C.A. Sec. 1464(q)(1)) expressly creates a private cause of action for those injured by violations of section 1464(q)(1). Id. Sec. 1464(q)(3).

142.  Defendant, Mortgagee, may be inferred to be thrift institution for the purposes of classification under The Thrift Institutions Restructuring Act,

143.  As set forth in Count VI, Defendant Mortgagee and Defendant Insurer are so closely tied together that they can be inferred as affiliates, or the same organization.

144.  To that end, Defendant Mortgagee and Defendant Insurer have violated the Thrift Institutions Restructuring Act by requiring, as a condition of being approved for a mortgage on the property that Plaintiffs must have hazard insurance through Defendant Insurer, and than canceling Plaintiffs' insurance so as to cause them to default on the mortgage.

WHEREFORE, Plaintiffs requests this Honorable Court award them compensatory damages, punitive damages plus court costs, attorney fees and such additional relief as the Court may deem necessary or proper.

09-10891

## COUNT IX

## PLAINTIFFS v. LITTLE ELK CREEK FARM, LLC; PSR LANCASTER LLC; PSR KIRKWOOD, LLC; THE LAW OFFICES OF BYLER, GOODLEY & WINKLE P.C., WILLIAM BRYAN BYLER; SAMUEL A. GOODLEY JR.; ERIC L. WINKLE; OLD ORDER AMISH HELPING PROGRAM; LEVI ESH, INDIVIDUALLY AND IN HIS CAPACITY AS THE ADMINISTER OF OLD ORDER AMISH HELPING PROGRAM; AMISH AID SOCIETY

### VIOLATION OF SECTION 805 OF THE FAIR HOUSING ACT

145. Paragraphs 1 through 143 are incorporated herein as though fully set forth at length.

146. Sec. 805. of the Fair Housing Act at 42 U.S.C. 3605, relating to Discrimination in Residential Real Estate, provides that:

> (a) In General.--It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.
>
> (b) Definition.--As used in this section, the term "residential real estate-related transaction" means any of the following:
>
> (1) The making or purchasing of loans or providing other financial assistance:
> > (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or
> > (B) secured by residential real estate

147. Defendant Mortgagee's business clearly includes engaging in residential real estate-related transactions including making loans or providing other financial assistance secured by residential real property.

148. Defendant Mortgagee openly discriminated against Plaintiffs by refusing to hold the mortgage on Plaintiffs' property when Plaintiffs were excommunicated from the Amish Church, causing Plaintiffs to lose their home, real and personal property and business.

WHEREFORE, Plaintiffs requests this Honorable Court award them

compensatory damages, punitive damages plus court costs, attorney fees and such

additional relief as the Court may deem necessary or proper.

## COUNT X

**PLAINTIFFS v. LITTLE ELK CREEK FARM, LLC; PSR LANCASTER LLC; PSR KIRKWOOD, LLC; THE LAW OFFICES OF BYLER, GOODLEY & WINKLE P.C., WILLIAM BRYAN BYLER; SAMUEL A. GOODLEY JR.; ERIC L. WINKLE; OLD ORDER AMISH HELPING PROGRAM; LEVI ESH, INDIVIDUALLY AND IN HIS CAPACITY AS THE ADMINISTER OF OLD ORDER AMISH HELPING PROGRAM; AMISH AID SOCIETY; AND AMISH SOCIETY OF LANCASTER COUNTY, PA**

### TORTUOUS INTERFERENCE WITH A CONTRACT

149. Paragraphs 1 through 147 are incorporated herein as though fully set forth at

length.

150. Section 766 Restatement (Second) of Torts which involves
interference with an existing contract provides as follows:

> One who intentionally and improperly interferes with the performance of a
> contract ... between another and a third person by inducing or otherwise
> causing the third party not to perform the contract, is subject to liability to
> the other for the pecuniary loss resulting to the other from the failure of
> the third person to perform the contract.

151. Restatement (Second) of Torts Section 766A provides:

> One who intentionally and improperly interferes with the performance of a
> contract ... between another and a third person, by preventing the other
> from performing the contract or causing his performance to be more
> expensive or burdensome, is subject to liability to the other for the
> pecuniary loss resulting to him.

152. Defendant Insurer and Levi Esh did interfere with Plaintiffs in their

ability to maintain their mortgage by arbitrarily canceling Plaintiffs' insurance

policy which was an integral provision of the Mortgage agreement between

Plaintiffs and Defendant Mortgagee.

153. Defendants Old Order Amish Helping Program, interfered with Plaintiffs' mortgage contract by arbitrarily increasing Plaintiffs' interest rate and payment amount contributing to Plaintiffs' mortgage foreclosure and the loss of home business and property and by calling for Plaintiffs to pay their mortgage in full prior to the expiration of the term.

154. Defendants Amish Society of Lancaster County, Pennsylvania also interfered with Plaintiffs' contract with Defendant Mortgagee and Defendant Insurer by colluding with both parties to have Plaintiffs' insurance contract arbitrarily canceled and Plaintiffs' mortgage foreclosed and in causing Plaintiffs' employees to quite and Plaintiffs' customers to discontinue doing business with him.

155. Defendants Little Elk Creek Farms, LLC , PSR Lancaster, LLC, PSR Kirkwood, LLC Law Office of Byler, Goodley and Winkle, P.C. and Defendants William Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle did tortuously interfere with Plaintiffs' contract with Defendant Mortgagee and Defendant Insurer when they colluded among themselves and the other defendants to cause defendant to lose his home, property and business and did interfere in Plaintiffs' business.

WHEREFORE, Plaintiffs requests this Honorable Court award them compensatory damages, punitive damages plus court costs, attorney fees and such additional relief as the Court may deem necessary or proper.

09-10891

## COUNT XI

**PLAINTIFFS v. LITTLE ELK CREEK FARM, LLC; PSR LANCASTER LLC; PSR KIRKWOOD, LLC; THE LAW OFFICES OF BYLER, GOODLEY & WINKLE P.C., WILLIAM BRYAN BYLER; SAMUEL A. GOODLEY JR.; ERIC L. WINKLE; OLD ORDER AMISH HELPING PROGRAM; LEVI ESH, INDIVIDUALLY AND IN HIS CAPACITY AS THE ADMINISTER OF OLD ORDER AMISH HELPING PROGRAM; AMISH AID SOCIETY; AND AMISH SOCIETY OF LANCASTER COUNTY, PA**

## TORTIOUS INTERFERENCE WITH A BUSINESS AND CONTRACT

156.  Paragraphs 1 through 154 are incorporated herein as though fully set forth at length.

157.  A successful claim for tortious interference with business and/or prospective contractual relation requires the plaintiff to show that:

> 1. A prospective contractual relation must exist between a third party and the plaintiff,
> 2. The purpose or intent must be to harm the plaintiff by preventing the relationship from occurring.
> 3. An absence of privilege or justification on the part of the defendant,                                                                 and
> 4. The occurrence of actual harm or damage to the plaintiff as a result of the defendant's conduct.

*See, Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895 (1971); *Collincini v. Honetwell, Inc.* 411 Pa. Super. 166, 601 A.2d 292, (Pa. Super. 1991);

158.  Plaintiffs were a party to numerous business relationships and numerous contractual relationships for which Defendants did intentionally, willfully, maliciously and tortuously interfere.

159.  Plaintiffs had a business and contractual relationship with their employees and their business customers.

160.  Defendant Old Order Amish Helping Program, Levi Esh individually and as the Administrator of Old Order Amish Helping Program, Amish Aid

Society, and the Amish Society of Lancaster County, did intentionally conspire
and induce Plaintiffs' employees to leave Plaintiffs' employ,

161. Defendant Old Order Amish Helping Program, Levi Esh individually
and as the Administrator of Old Order Amish Helping Program, Amish Aid
Society, and the Amish Society of Lancaster County, did further intentionally
conspire to cause Plaintiffs' customers who were members of the Amish Society
to no longer conduct business with Plaintiffs.

162. In arbitrarily and without cause, canceling Plaintiffs' insurance,
knowing that that would expressly and automatically cause Plaintiffs to default on
their mortgage, Defendants Insurer and Mortgagee tortiously interfered with the
business and contractual relation between Plaintiffs and Mortgagee and Plaintiffs
and Insurer.

163. Defendant Old Order Amish Helping Program, Levi Esh individually
and as the Administrator of Old Order Amish Helping Program, Amish Aid
Society, and the Amish Society of Lancaster County, had no recognized privilege,
regardless of what the Amish community may believe, to interfere with the
business and contractual relationship between Plaintiffs and their employees or
customers.

164. As a direct result of Defendant Old Order Amish Helping Program,
Levi Esh individually and as the Administrator of Old Order Amish Helping
Program, Amish Aid Society, and the Amish Society of Lancaster County,
tortious interference with Plaintiffs' business and contracts, Plaintiffs' business
did fail, causing Plaintiffs to lose their livelihood, home and personal property.

165. Defendants, Little Elk Creek Farms, LLC; PSR Lancaster, LLC; PSR
Kirkwood, LLC; the Law Firm of Byler, Goodley and Winkle, P.C.; Defendants William

Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle; Old Order Amish Helping Program, Levi Esh individually and as the Administrator of Old Order Amish Helping Program, Amish Aid Society, and Amish Society of Lancaster County did intentionally and tortiously interfere with a business relationship and a contractual relationship between Plaintiffs and Mortgagee and between Plaintiffs and Insurer.

166. Defendants, Old Order Amish Helping Program, Levi Esh individually and as the Administrator of Old Order Amish Helping Program, Amish Aid Society, and Amish Society of Lancaster County did conspire to have Plaintiffs' membership in the Amish church canceled and have them excommunicated from the Amish church, claiming their business had grown to big.

167. Defendants, Little Elk Creek Farms, LLC; PSR Lancaster, LLC; PSR Kirkwood, LLC; the Law Firm of Byler, Goodley and Winkle, P.C.; Defendants William Bryan Byler, Samuel A. Goodley Jr., and Eric L. Winkle; Old Order Amish Helping Program, Levi Esh individually and as the Administrator of Old Order Amish Helping Program, Amish Aid Society, and Amish Society of Lancaster County did then intentionally and tortiously conspire to have Plaintiffs' insurance canceled, Plaintiffs' mortgage called in, Plaintiffs' employees to quite, Plaintiffs' customers to leave and Plaintiffs' to lose their livelihood, their home, and their personal and real property.

168. Defendants had absolutely no privilege, regardless of what the Amish community may believe, to destroy Plaintiffs' business and cause them to lose their livelihood, their home, and their personal and real property.

169. The Defendants have tortiously interfered in Plaintiffs' contractual and business relationships causing Plaintiffs and their twelve children grave financial and personal harm.

170.  Plaintiffs' damages include Plaintiffs' loss of business, home, the loss of the equity they had built up in the real property, and the loss their home, business, livelihood, and personal and business property.

WHEREFORE, Plaintiffs requests this Honorable Court award them compensatory damages, punitive damages plus court costs, attorney fees and such additional relief as the Court may deem necessary or proper.

## COUNT XII

### PLAINTIFFS v. LITTLE ELK CREEK FARM, LLC; PSR LANCASTER LLC; PSR KIRKWOOD, LLC; THE LAW OFFICES OF BYLER, GOODLEY & WINKLE P.C., WILLIAM BRYAN BYLER; SAMUEL A. GOODLEY JR.; ERIC L. WINKLE; OLD ORDER AMISH HELPING PROGRAM; LEVI ESH, INDIVIDUALLY AND IN HIS CAPACITY AS THE ADMINISTER OF OLD ORDER AMISH HELPING PROGRAM; AMISH AID SOCIETY; AND AMISH SOCIETY OF LANCASTER COUNTY, PA

### CONSPIRACY

171.  Paragraphs 1 through 169 are incorporated herein as though fully set forth at length.

172.  The elements of a cause of action for civil conspiracy are: (1) a combination of two or more persons; (2) intent to do an unlawful act or to do a lawful act by unlawful means; (3) the commission of an overt act in pursuance of the common intent; and (4) actual damage. *Thompson Coal Company v. Pike Coal Company*, 488 Pa. 198, 412 A.2d 466 (1979); *Baker et al. v. Rangos et al.*, 229 Pa.Super. at 333.

173.  As set forth above, all of the named Defendants have conspired  and colluded to unlawfully force Plaintiffs' employees to quite, force Plaintiffs' customers to discontinue doing business with them, caused Plaintiffs' insurance to be canceled, caused Plaintiffs' mortgage to be accelerated, cause Plaintiffs to lose their business, their home

their property, and their livelihood. Each and every one of these act has been overt and predatory.

174. Plaintiffs' damages have been extensively delineated, including Plaintiffs' loss of business, home, the loss of the equity they had built up in the real property, and their personal and business property.

WHEREFORE, Plaintiffs requests this Honorable Court award them compensatory damages, punitive damages plus court costs, attorney fees and such additional relief as the Court may deem necessary or proper.

## COUNT XIII

## PLAINTIFFS v. LITTLE ELK CREEK FARM, LLC; PSR LANCASTER LLC; PSR KIRKWOOD, LLC; THE LAW OFFICES OF BYLER, GOODLEY & WINKLE P.C., WILLIAM BRYAN BYLER; SAMUEL A. GOODLEY JR.; ERIC L. WINKLE

## CONVERSION

175. Paragraphs 1 through 173 are incorporated herein as though fully set forth at length.

176. The Restatement (Second) of Torts sec. 222A (1965) defines the civil tort of conversion as follows:

> (1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.
> (2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:
>> (a) the extent and duration of the actor's exercise of dominion or control;
>> (b) the actor's intent to assert a right in fact inconsistent with the other's right of control;
>> (c) the actor's good faith;

(d) the extent and duration of the resulting interference with the other's right of control;

(e) the harm done to the chattel;

(f) the inconvenience and expense caused to the other.

177. Defendants did intentionally exercise dominion and control over Plaintiffs' business and personal property by holding same on the Real Property after acquiring it from Plaintiffs and by not allowing Plaintiffs access to regain possession of the said property. Exhibit Q

178. Defendants' exercise of dominion or control over Plaintiffs' business and personal property was so seriously that it interferes with the right of Plaintiffs to gain control of their business and personal property, continue their metal fabricating business, earn a living, furnish a new home, cloth their children, or have the use of any of the property Plaintiffs owned, which was wrongfully held by Defendants.

179. Defendants' conversion of Plaintiffs' property was and continues to be for an indefinite period of time, with the intent to assert a right in fact inconsistent with Plaintiffs' right to control their own property, perpetrated in bad faith, and causing Plaintiffs great inconvenience and expense and loss of income.

180. At no time have Defendants ever assert any claim or right of ownership to Plaintiffs' property held in Defendants control. See Exhibit Q

181. Defendants did commit the civil tort of conversion against Plaintiffs

WHEREFORE, Plaintiffs requests this Honorable Court award them compensatory damages, punitive damages plus court costs, attorney fees and such additional relief as the Court may deem necessary or proper.

09-10891

Respectfully submitted,

**Darrell VanOrmer and Associates**

By _____

Darrell Van Ormer, Esquire
PA Attorney License No. 22046

_____

Steven R. Snyder, Esquire
PA Attorney License No. 90994

344 South Market Street
Elizabethtown, PA 17022
(717) 367-6831
FAX (717) 361 2141

Attorneys for the Plaintiffs

Date  7/17/09

09-10891

## VERIFICATION

I Daniel Stoltzfus do hereby verify that the statements made in the forgoing document are true and correct, to the best of my knowledge, or information and belief. I understand that the statements herein are subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

Date __7/16/09__                         _____

                                          Daniel Stoltzfus